UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
AMERICAN HOME ASSURANCE  
COMPANY and NAVIGATORS  
INSURANCE COMPANY, SUBSCRIBING  
TO POLICY NO. C1874,

            Plaintiffs,

            -against-

THE BABCOCK & WILCOX COMPANY,

            Defendant.
----------------------------------------------------------X

NOT FOR PUBLICATION

MEMORANDUM & ORDER

06-CV-6506

AMON, United States District Judge:

Plaintiffs American Home Assurance Corporation ("AHAC") and Navigators Insurance Company ("NY Navigators") filed a declaratory judgment action against defendant Babcock & Wilcox Company ("B&W"). B&W has filed a motion to dismiss, asserting that AHAC has failed to join two necessary and indispensable parties, and that joinder of these parties will destroy the Court's diversity jurisdiction. For the reasons set forth below, the Court grants defendant's motion to dismiss.

**I.    Background**

On December 7, 2006, plaintiff AHAC filed this declaratory judgment action, seeking a declaration that it is not responsible as the insurer under an excess general liability policy held by defendant B&W. The insurance policy at issue is an excess general liability policy that provides $50 million in insurance coverage in excess of $325 million provided by other insurance carriers. (Am. Compl., Exh. A.) The policy was executed in 2003. (Id.) The plaintiff wishes to be exonerated from liability for damages arising out of a fire at a refinery owned by Citgo Petroleum

Corporation, a Delaware corporation headquartered in Texas, and PDV Midwest Refining, L.L.C., a Delaware corporation domiciled in Illinois (collectively, "Citgo"). In connection with the fire, Citgo filed suit against B&W in Illinois state court, seeking damages of approximately $545 million, in excess of all of B&W's insurance limits, including the policy at issue. On November 6, 2006, the Illinois state court entered judgment on a verdict in favor of Citgo in the amount of $387,421,694.65. Shortly thereafter, AHAC filed a declaratory judgment action against B&W, requesting that this Court declare that there is no coverage under the insurance policy or that the insurance policy is void. After the action commenced, B&W assigned all its insurance rights to Citgo as part of a global settlement of the underlying action.

The insurance policy is subscribed to by two insurers: AHAC and an entity known as Navigators Insurance. Although the original complaint named only AHAC as plaintiff, AHAC amended its complaint to add Navigators Insurance Company ("NY Navigators"), a New York corporation headquartered in New York. (Am. Compl. ¶¶ 2, 5.) B&W contends, however, that the co-insurer is actually a separate and distinct entity called Navigators Insurance Services of Texas, Inc, ("Texas Navigators"), a Texas corporation domiciled in Texas. (Am. Compl., Exh. A.)

B&W has moved to dismiss the complaint, asserting that the plaintiffs have failed to name two necessary and indispensable parties, Texas Navigators, who is named as an insurer on the policy, and Citgo, to whom the insurance rights have been assigned. B&W asserts that joining both of these parties will destroy diversity jurisdiction, as Citgo and Texas Navigators both are citizens of Texas. See 28 U.S.C. § 1332(c).

**II. Discussion**

   **A. Joinder of necessary and indispensable parties destroys diversity jurisdiction**

Pursuant to Rule 19 of the Federal Rules of Civil Procedure, the court must conduct a two-step inquiry to determine whether an action must be dismissed for failure to join a necessary and indispensable party. See Associated Dry Goods Corp. v. Towers Fin. Corp., 920 F.2d 1121, 1123-24 (2d Cir. 1990). First, the court must focus on whether the presence of the party to the action is necessary. Specifically, Rule 19(a) provides, in relevant part:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

If a party is necessary, but joinder would divest the court of jurisdiction, the court must consider whether dismissal is warranted under Rule 19(b), that is, whether the suit can proceed "in equity and good conscience" without the necessary party. See Fed.R.Civ.P. 19(b); Associated Dry Goods, 920 F.2d at 1124. As a general rule, courts prefer to avoid dismissing the action; thus, "very few cases should be terminated due to the absence of non-diverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." Jaser v. New York Property Ins. Underwriting Ass'n, 815 F.2d 240, 242 (2d Cir. 1987).

The criteria for determining whether a party is indispensable are set forth in Federal Rule of Civil Procedure 19(b). A court should consider: (1) to what extent a judgment rendered in the

person's absence might be prejudicial to him or those already parties, (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided, (3) whether a judgment rendered in the person's absence will be adequate, and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.  See Seneca Nations of Indians v. New York, 383 F.3d 45, 48 (2d Cir. 2004).

### 1. Navigators Insurance of Texas is necessary and indispensable

B&W asserts that Texas Navigators is a necessary and indispensable party because it is named as the co-insurer on the insurance policy, and is therefore potentially liable for 20% of the $50 million coverage set forth in the policy.  AHAC does not dispute that the co-insurer is a necessary and indispensable party.  However, AHAC claims that although Texas Navigators is the party named on the insurance policy at issue, Texas Navigators it is merely the "managing general agent" and that New York Navigators, a separate and distinct entity, is actually the co-insurer.  Thus, AHAC claims that Texas Navigators is not necessary and indispensable.

Under New York law, when the terms of a policy are "are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement."  United States Fidelity & Guar. Co. v. Annunziata, 67 N.Y.2d 229, 232 (N.Y. 1986).  B&W's 2003 policy, which is the policy at issue, clearly identifies the insurers as AHAC and "Navigators Insurance Services of Texas."  (Am. Compl., Ex. A at p. 4.)  New York Navigators is not named on the insurance policy at issue, nor is any other Navigators entity domiciled in New York.  Thus, the policy, on its face, indicates that Texas Navigators is the co-insurer and is liable under the contract.

AHAC argues, however, that Texas Navigators is a "managing general agent" of New

York Navigators and that New York Navigators, as the principal, is the true insurer under the contract. AHAC submits a number of documents and affidavits in support of its argument. For example, AHAC argues that Texas Navigators' articles of incorporation state that it was incorporated "to act as general agent for one or more admitted and licensed insurance companies or carriers." (See N. Brendel Aff., Exh. A.) In addition, although the 2002 policy refers to the insurer as "Navigators Insurance Services of Texas," that policy was signed by Walter Caskey on behalf of "Navigators Insurance Company per Navigators Insurances Services of Texas, Inc." (Caskey Aff., Exh. 9) Furthermore, Caskey sent facsimiles to B&W's insurance broker, regarding each of the 2002 and 2003 policies, in which the "company" is referred to as New York Navigators. (Caskey Aff., Exhs. 8, 11.)

However, just as AHAC has submitted documents in which the parties to the insurance policy refer to New York Navigators, B&W has submitted papers in which the parties refer to Texas Navigators. For example, B&W has submitted a binder for the 2003 policy, which refers to the "security" as AHAC and "Navigators Insurance Services of Texas, Inc. Thru Somerset Insurance." (See Bowe Aff., Exh. B.) In addition, B&W has submitted a letter, written by AHAC's counsel and addressed to B&W, in which AHAC's counsel refers to "American Home Assurance Company and its following underwriter on the captioned policy, Navigators Insurance Services of Texas, Inc." (See N. Brendel Aff. II, Exh. C.)

Finally, both Texas Navigators and New York Navigators are currently parties to lawsuits regarding the policy at issue. On February 26, 2007, after B&W requested permission to file the instant motion to dismiss, AHAC amended its complaint to include New York Navigators as a plaintiff. In addition, approximately a month after AHAC filed this declaratory judgment action,

B&W, Citgo, and certain underwriters to the policy filed a lawsuit in state court in Louisiana, the state in which the policy was issued for delivery, seeking payment under the policy. The plaintiffs in that action named Texas Navigators and AHAC as defendants.

As Texas Navigators is not a party to this lawsuit, which is still at the pleading stage, the Court declines to determine as a matter of law which Navigators entity is the co-insurer on the insurance policy. Such a determination could potentially impede Texas Navigators' ability to defend the aforementioned Louisiana state action. Even without determining which Navigators entity is the co-insurer, however, it is clear that Texas Navigators is a necessary and indispensable party. Texas Navigators has an interest in the subject of the action, as this Court's determination of whether the insurance policy is valid, and whether the incident at issue is covered by the policy, could impede Texas Navigators' ability to defend the Louisiana state lawsuit.

Furthermore, joinder is proper, even if diversity is destroyed, as the suit cannot proceed in equity and good conscience without Texas Navigators. First of all, a judgment rendered in Texas Navigators' absence is not only prejudicial to Texas Navigators, but is potentially prejudicial to New York Navigators and B&W, who may not be able to obtain full relief. This Court cannot determine, in Texas Navigators' absence, which of the Navigators entities is the co-insurer under the contract. That is, New York Navigators is unable to assert that the policy is invalid against it because it is not named as the co-insurer on the insurance policy. Thus, New York Navigators cannot assert all of the defenses which would be available to it should it be sued for payment under the contract. Similarly, B&W cannot obtain a declaration that New York Navigators is liable under the contract. Thus, any declaratory relief, for either New York Navigators or B&W, will be less than full.

In addition, it is not possible for the Court to fashion relief so as to lessen the prejudice to Texas Navigators. Whether the policy is valid as to the insurers generally, and whether the policy covers the incident at issue, are issues that appear to be identical with respect to both AHAC and its co-insurer. The Court cannot declare that the policy covers the incident at issue for AHAC, but not for the co-insurer. In addition, the plaintiffs have an adequate remedy if the action is dismissed for nonjoinder. First of all, the complaint asserts a state law cause of action. The plaintiffs may choose to pursue a declaratory judgment action in New York state court. Indeed, during oral argument on this motion, the Court was informed that AHAC had filed a declaratory judgment action in New York state court on the same day as the instant federal action was filed, although that case was never served on the defendants and has since lapsed.

Furthermore, this suit is a declaratory judgment action in which the plaintiffs seek to be absolved of liability under the policy in anticipation of a claim under that policy. As noted above, on January 18, 2007, B&W, Citgo and certain underwriters to the policy filed a comprehensive lawsuit in Louisiana, the state in which the policy was issued for delivery, seeking payment under the policy. The plaintiffs may assert any arguments as to the validity of the contract and coverage under that contract in the Louisiana lawsuit.

Accordingly, Texas Navigators is a necessary and indispensable party to this action.

### 2. Citgo is necessary and indispensable

B&W further argues that Citgo is a necessary and indispensable party to this action. On November 6, 2006, prior to the commencement of this suit, an Illinois jury awarded a verdict in favor of Citgo and judgment was entered in the approximate amount of $387 million. (See N. Brendel Aff., Exh. A.) Citgo, therefore, is a judgment creditor of B&W, and prior to the filing of

this lawsuit, had a right to collect on any insurance proceeds implicated by the jury verdict. Furthermore, shortly after the action commenced, B&W assigned all its insurance rights to Citgo as part of a global settlement of the underlying action. B&W retains no monetary interest under the insurance contract. AHAC was aware, prior to filing the declaratory judgment action, that this assignment of insurance rights was imminent. (See Caskey Aff., Exh. 16.)

Thus, Citgo has an interest in this Court's determination as to whether there is coverage under the insurance policy or whether the policy is void. Should this Court determine that the policy is not valid, or that the incident at issue is not covered by the policy, Citgo, the assignee of the $50 million insurance payments under the settlement agreement, will not be able to collect that payment. See Traveler's Indem. Co. v. Dingwell, 691 F. Supp. 503, 507-09 (D. Me. 1988), aff'd, 884 F.2d 629 (1st Cir. 1989) (noting that insured retained negligible interest dismissing declaratory judgment of insurer for failure to join assignees of insurance contract, where insured retained "negligible" interest in the insurance proceeds). Accordingly, the disposition of the action may "as a practical matter impair or impede [Citgo's] ability to protect [its] interest . . . ." Id. at 507 (quoting Fed. R. Civ. P. 19(a)); see also Pay Tel Sys., Inc. v. Seiscor Techs., Inc., 850 F.Supp. 276, 278 (S.D.N.Y. 1994) ("Where complete assignments [of claims] have been made, the assignee is the real party in interest and a necessary party under Fed. R. Civ. P. 19.").

Furthermore, joinder of Citgo is proper, even if it destroys diversity jurisdiction. As noted above, a judgment rendered in the Citgo's absence would be prejudicial, as Citgo may not be able to collect the $50 million insurance payments. Furthermore, the Court cannot shape its relief so as to lessen or ameliorate the prejudice to Citgo. As the plaintiffs themselves note, "Citgo's rights, if any, under the Policy are purely derivative of B&W." (Pl.'s Br. at 7.) This Court cannot

declare that the policy is void as to B&W's right to collect without also determining that it is void as to Citgo's right to collect. If the Court were to make such a declaration, any relief granted to the plaintiffs would be meaningless. Thus, any determination that B&W's insurance contract is invalid, or that it does not cover the incident at issue, must apply with equal force to Citgo. Finally, as discussed above, the plaintiffs have an adequate remedy if the action is dismissed for nonjoinder.

The plaintiffs argue that Citgo had no contractual rights under the policy when this declaratory judgment action was commenced and that it was only after the action was commenced that Citgo and B&W entered in to the settlement agreement wherein B&W assigned Citgo its rights. (Pl.'s Br. at 7.) However, prior to the filing of this declaratory action, the plaintiffs were aware that Citgo would be entitled to the proceeds of the policy, both because Citgo was a judgment creditor based on the underlying incident and because Citgo and B&W were negotiating a settlement agreement under which all insurance rights would be assigned to Citgo. It is also apparent that the plaintiffs filed their lawsuit in response to the impending settlement agreement. B&W informed AHAC that Citgo was demanding payment of the $50 million policy as part of a settlement agreement as early as November 17, 2006. On December 6, 2006, B&W informed AHAC once more that it wished to settle with Citgo, and that Citgo was demanding full payment of the AHAC policy. (Brennan Aff., Exh. 16.) The following day, B&W filed the instant action. As one court has noted in a similar context: "Under these circumstances, we would be blinking at reality if we allowed the effective date of the agreement to control our analysis and regarded the [assignees] as mere potential claimants to whom an interest later was transferred rather than as interested parties from the outset of the declaratory judgment action. Rule 19 does not require

9

such a myopic and formal approach toward identifying interested parties." Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 634 (1st Cir. 1989) (internal quotations and citation omitted). Accordingly, Citgo is a necessary and indispensable party, and must be joined even if doing so destroys diversity jurisdiction.

### B. The Court declines to exercise its discretionary jurisdiction

Finally, even if diversity jurisdiction does exist, the Court has substantial discretion to decline to exercise jurisdiction because the plaintiffs request relief under the Declaratory Judgment Act. See Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995) ("[T]he Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."); Dow Jones & Co. V. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003) (holding that the Declaratory Judgment Act "by its express terms vests a district court with discretion to determine whether it will exert jurisdiction over a proposed declaratory judgment action or not") (citing Wilton, 515 U.S. 277 at 282 and Broadview Chem. Corp. v. Loctite Corp. 417 F.2d 998, 1000 (2d Cir. 1969)); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v Turbi de Angustia, No. 05 Civ. 2068, 2005 WL 2044930, at *2 (S.D.N.Y. August 23, 2005) (noting that district courts have broad discretion in declining to exercise jurisdiction over declaratory actions they would otherwise be able to hear) (citations omitted). The Declaratory Judgment Act "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952). The statute reads, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §

2201(a) (emphasis added). "The statute's textual commitment to discretion and the breadth of leeway [the Supreme Court] ha[s] always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface. . . . In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Wilton, 515 U.S. at 286-88 (internal citations and quotations omitted).

A district court's exercise of discretion under the Declaratory Judgment Act is informed by two concerns; namely (1) whether "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) whether "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Broadview Chem. Corp., 417 F.2d at 1000-01; see also Dow Jones & Co., 346 F.3d at 359. This test has been expanded to additionally ask: "(1) whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy." Dow Jones & Co., 346 F.3d at 359 (citing NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A., 28 F.3d 572, 577 (7th Cir. 1994); Grand Trunk R.R. Co. v. Consol. Rail Corp., 746 F.2d 323, 326 (6th Cir. 1984)). A court may also consider whether entertaining a declaratory judgment will result in duplicative proceedings on the federal and state levels or piecemeal litigation. See Wilton, 515 U.S. at 280-81 (affirming lower courts' decisions to decline declaratory judgment action to avoid piecemeal litigation, forum shopping, and duplicative proceedings).

In this case, the factors weigh against this Court's exercise of jurisdiction. Although

11

resolution of the coverage dispute may resolve some of the legal relations in issue, it will not resolve them all, nor is it likely to terminate the controversy giving rise to the proceeding. As noted above, the instant declaratory judgment action cannot provide full relief to the litigants or other interested parties. Therefore, an exercise of jurisdiction by this court will not "terminate and afford relief from the uncertainty. . . giving rise to the proceeding"; rather, an incomplete resolution of these legal issues by this Court will create additional uncertainty.

Furthermore, declining to exercise jurisdiction will not cause prejudice to any party, because the legal matters at issue in this case could be resolved by the filing of a declaratory judgment in state court, where the instant jurisdictional issues will not arise. Indeed such a case was filed and apparently not pursued. Moreover, the state court case currently pending in Louisiana, where AHAC and Texas Navigators have already been named as defendants, is a better and more effective means to resolve the underlying dispute. As New York Navigators is not currently a party to that lawsuit, the Louisiana case is not strictly parallel to the instant action. See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp, 108 F.3d 17, 22-23 (2d Cir. 1997) ("Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same."). However, principles of abstention still apply particularly because there does not seem to be any jurisdictional impediment to New York Navigators presence in the Louisiana lawsuit. Accordingly, B&W and the other Louisiana plaintiffs could choose to amend their complaint to add a cause of action against New York Navigators. Alternatively, if New York Navigators wishes to settle any dispute as to its liability under the insurance contract, it may seek to intervene in the Louisiana lawsuit.

Additionally, although the parties dispute whether New York or Louisiana law applies, it is abundantly clear that the underlying insurance dispute does not implicate any federal issues. The Supreme Court has cautioned that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." Brillhart, 316 U.S. at 495; see also Wilton, 515 U.S. at 283; Cadle Co. v. Bankers Fed. Sav. FSB, 929 F.Supp. 636, 639 (E.D.N.Y. 1996) ("Declaratory judgment actions which have as their underlying basis rights that are essentially governed by state law present particularly appropriate cases for application of the abstention doctrine."). By declining to exercise jurisdiction, the Court will avoid creating piecemeal litigation and duplicating many of the proceedings occurring on the state level in Louisiana.

As a result, "[d]istrict courts routinely invoke the doctrine of abstention in insurance coverage actions, which necessarily turn on issues of state law." Travelers Indem. Co. v. Philips Elecs. N. Am. Corp., No. 02-CV-9800, 2004 WL 193564, at *2 (S.D.N.Y. Feb. 3, 2004) (citing Reliance Ins. Co. of Illinois v. Multi-Financial Sec. Corp., No. 94-CV-6971, 1996 WL 61763, at *3-4 (S.D.N.Y. Feb. 13, 1996) ("Tipping heavily in favor of abstention in this case . . . is the fact that state law will govern the outcome of this action. With very narrow exception, Congress has long explicitly exempted the federal government from regulation of the insurance industry.")); Wilton, 515 U.S. at 279-90; Nat'l Union Fire Ins. Co., 108 F.3d at 20-23; Am. Motorists Ins. Co. v. Glidden Co., 129 F. Supp. 2d 640, 641 (S.D.N.Y. 2001); Nat'l Union Fire Ins. Co. v. Warrantech Corp., No. 00-CV-5007, 2001 WL 194903, at *3 (S.D.N.Y. Feb. 27, 2001); Commercial Underwriters Ins. Co. v. Glowmaster Corp., 105 F. Supp. 2d 268, 270 (S.D.N.Y.

2000); Fed. Ins. Co. v.. Safeskin Corp., No. 98-CV-2194, 1998 WL 832706, at *3-4 (S.D.N.Y. Nov. 25, 1998); Employers Ins. of Wausau v. El Paso Tenn. Pipeline Co., No. 98-CV-4612, 1998 WL 790937, at *1-2 (S.D.N.Y. Nov. 13, 1998)); see also Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C., 475 F. Supp. 2d 213, 234 (E.D.N.Y. 2007) (granting motion to abstain from declaratory judgment cause of action where there is a parallel pending state court action and the rule of decision is one of state, not federal, law).

Accordingly, even if joinder of Texas Navigators and Citgo were not proper, such that this Court retained its diversity jurisdiction, the Court would decline to exercise its discretionary jurisdiction under the Declaratory Judgment Act.

## CONCLUSION

For the reasons set forth above, the Court grants defendant's motion to dismiss. The Clerk of the Court is directed to enter judgment in accordance with this order and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
December 6, 2007

Carol Bagley Amon
United States District Judge